IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MOHAMMAD SHAH KHAN AJABZOI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-551 (RDA/IDD) |
| | ) | |
| KRISTI NOEM, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## ORDER

On February 24, 2026, Petitioner Mohammad Shah Khan Ajabzol ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 alleging that he is being unlawfully detained at the Caroline Detention Center. Dkt. 1. Respondents filed their Opposition on February 27, 2026. Dkt. 3. In their Opposition, Respondents asserted that Petitioner was encountered at the border and subsequently paroled for humanitarian reasons, such that Petitioner remains subject to detention under Section 1225. *Id.* After receiving an extension, on March 13, 2026, Petitioner filed a Reply, reiterating his arguments that he is detained under 8 U.S.C. § 1226(a) and that his ongoing detention violates his due process rights. Dkt. 7. Now that this matter has been fully briefed and is ripe for disposition, the Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). For the reasons set forth below, the Petition is GRANTED.

## I. BACKGROUND

Petitioner is a native and citizen of Afghanistan who has resided in the United States since 2024. Dkt. 1 ¶ 42. On October 2, 2024, Customs and Border Protection ("CBP") encountered Petitioner in or around Boulevard, California. Dkt. 3-1. CBP agents determined that Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an

immigration officer. *Id.* ¶ 6. Petitioner then expressed a credible fear of returning to Afghanistan. *Id.* ¶¶ 7-8. On November 26, 2024, Petitioner was then granted interim parole for one year. *Id.* ¶ 9. The notice that Petitioner received indicates that the parole expired on November 26, 2025. Dkt. 1-3.

On December 19, 2025, Immigration and Customs Enforcement ("ICE") agents detained Petitioner at a routine ICE check-in. Dkt. 1 ¶ 45; Dkt. 3-1 ¶ 10. Petitioner is currently in immigration detention at the Caroline Detention Center. Dkt. 1 ¶ 46. Petitioner's immigration proceedings remain pending, and his next hearing is scheduled for April 16, 2026. Dkt. 3-1 ¶ 11.

## II.  LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.  DISCUSSION

"Every year, hundreds of thousands of aliens are apprehended at or near the border attempting to enter this country illegally." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106 (2020). Individuals detained upon arrival into the United States are grouped into two categories: those covered by 8 U.S.C. § 1225(b)(1) and those covered by 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Relevant here, Section 1225(b)(2) governs

2

noncitizens who are "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted," and provides that they "shall be detained." 8 U.S.C. § 1225(b)(2)(A).

Although Section 1225(b) does not provide for bond hearings, it contains "a specific provision authorizing release from . . . detention" for "humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300. This status is referred to as "parole," and "parole of such alien[s] shall not be regarded as an admission of the alien[s]." 8 U.S.C. § 1182(d)(5)(B). Whether to grant parole requires a "case-by-case" determination, 8 U.S.C. § 1182(d)(5)(A), and the Department of Homeland Security ("DHS") "may require reasonable assurances that the alien will appear at all hearings and/or depart the United States when required to do so," 8 C.F.R. § 212.5(d). Specifically, the regulations require that, in determining whether parole is appropriate, DHS "should apply reasonable discretion" and may consider "all relevant factors," including "[t]he giving of an undertaking by the applicant, counsel, or a sponsor to ensure appearances or departure"; "[c]ommunity ties such as close relatives with known addresses"; and "[a]greement to reasonable conditions (such as periodic reporting of whereabouts)." *Id.* Importantly, humanitarian parole "shall not be regarded as an admission of the alien," and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Thus, district judges in this District have described parole as "a legal fiction whereby non-citizens are physically permitted to enter the country but are nonetheless treated, for legal purposes, as if stopped at the border." *Pineda-Berrios v. Lyons*, 2026 WL 384159, at *2 (E.D. Va. Feb. 11, 2026) (quoting *Chanaguano Caiza v. Scott*,

3

2025 WL 3013081, at \*5 (D. Me. Oct. 28, 2025)).[1]

"[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return to be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). DHS regulations provide further guidance on when and how DHS may terminate parole. Parole may terminate automatically and without written notice where the alien departs the United States or "at the expiration of the time for which parole was authorized" pursuant to the provisions in "paragraph (e)(2) of this section except that no written notice shall be required." 8 C.F.R. § 212.5(e)(1). Paragraph (e)(2) provides that:

> In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e)(2).

Having set forth this statutory background, the Court must next determine whether the

---

[1] Because Petitioner was stopped at the border and subsequently paroled, he is not subject to the provisions of 8 U.S.C. § 1226 and not entitled to bond. Thus, to the extent Count I of the Petition is premised on Section 1226 and Petitioner's entitlement to bond, the Petition is unsuccessful. But, in Count II, Petitioner alleges a violation of due process and that is where this Court's analysis focuses.

Court has jurisdiction to review the Petition. Respondents argue that this Court lacks jurisdiction over the Petition because "the Attorney General's *policy* and interpretation of law in *Matter of M-S-* are foreclosed from judicial review under the INA." Dkt. 3 at 8 (emphasis original) (citing 8 U.S.C. § 1252(a)(2)(B)(iv)). In relevant part, Section 1252(a)(2)(B)(iv) strips federal courts of jurisdiction to review "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)." Fundamentally, however, those are not the questions before this Court. *See Said v. Noem*, 2025 WL 3657217, at *4 (W.D.N.C. Dec. 17, 2025) ("As a threshold matter, this Court has jurisdiction to consider Petitioner's habeas challenge to his detention whether his parole was revoked or automatically terminated."); *L.M. v. Noem*, 2026 WL 103231, at *8–9 (D. Nev. Jan. 14, 2026) (holding that "the question of whether parole is properly revoked pursuant to statutory and regulatory requirements, *i.e.* whether '[t]he revocation was lawfully authorized' is a predicate determination before a court can properly conclude that it lacks jurisdiction to review the revocation"). In any event, even where courts are stripped of jurisdiction over substantive decisions, courts still have jurisdiction to evaluate whether DHS complied with its own procedures and regulations. *Islam v. USCIS*, 2025 WL 1554777, at *3 n.2 (4th Cir. June 2, 2025); *cf. Ortez v. USCIS*, 2026 WL 616491, at *2 (4th Cir. Mar. 5, 2026) (emphasizing that stripping courts of jurisdiction over discretionary decisions does not preclude all challenges to agency action). Accordingly, because Petitioner argues that he has been detained in violation of his due process rights, Section 1252 does not preclude judicial review.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. *See* U.S. CONST. amend V. Although noncitizens "on the threshold of initial entry" are entitled only to the procedures authorized by Congress, any person who has "passed through our gates" is entitled to "proceedings conforming to traditional standards of fairness

5

encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Put differently, the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the familiar three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under that test, the Court must consider: (1) "the private interest that will be affected by the official action"; (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. The Court finds that all three *Mathews* factors point in the same direction: The unilateral revocation of Petitioner's parole without providing him with individualized consideration deprived him of his due process rights.

*First*, as recognized by the Supreme Court, Petitioner has a significant liberty interest in remaining out of custody. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."). The fact that DHS has some discretion in this arena does not erase Petitioner's protectable liberty interest. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *M.B. v. Noem*, 2026 WL 74155, at *3 (E.D. Cal. Jan. 9, 2025) ("[O]nce the government exercises its discretion in ways that create constitutional rights, the fact that the government retains statutory discretion does nothing to supplant those previously created rights."). Moreover, in these circumstances, the provision of an

6

expiration date on the grant of parole does not obviate the need for individualized consideration. Here, Petitioner was not detained upon the expiration of his parole but continued to live within the United States for several weeks without revocation. Thus, Respondents treated Petitioner as subject to 8 C.F.R. § 212.5(e)(2) – not (e)(1) – and cannot now argue that his parole terminated automatically. *See, e.g., Pineda-Berrios*, 2026 WL 384159, at *6; *Orellana v. Francis*, 2025 WL 2402780, at *5 (E.D.N.Y. Aug. 19, 2025) (recognizing that "[s]everal courts have found that, as in the case of grants of parole Section 1182 requires an individualized case-by-case determination before parole can lawfully be revoked"), *on reconsideration in part*, 2025 WL 2822640 (E.D.N.Y. Oct. 3, 2025) (correcting a citation).[2]

*Second*, the procedures used to revoke Petitioner's parole risked erroneously depriving him of his liberty interest. Petitioner was released on parole, which was set to expire on November 26, 2025. Dkt. 1-3. That date came and went, however, without a revocation of Petitioner's parole. Thus, Respondents argument that the parole "automatically terminated" fails because factually his parole did not terminate on the date designated. *Contrast* Dkt. 1-3 (notice providing that parole would terminate on November 26, 2025), *with* Dkt. 3-1 ¶ 10 (noting that Petitioner retained his liberty until December 19, 2025). And there is no evidence in the record that any official with authority conducted the individualized inquiry required by 8 C.F.R. § 212.5(e)(2) at the time Petitioner was ultimately arrested.

---

[2] This Court has reached a similar conclusion in cases addressing whether an alien is detained under Section 1225(b)(1) or (b)(2) or Section 1226. In those cases, the Court has determined that, where Respondents treat an alien as if he is under Section 1226 and provide for bond, Respondents cannot summarily revoke that bond, absent changed circumstances, and argue that the alien is detained under Section 1225. *See, e.g., Maldonado Mendez v. Bondi*, 1:25-cv-2401, Dkt. 9 (E.D. Va. Feb. 18, 2026); *Santos Paz v. Bondi*, 1:26-cv-165 (E.D. Va. Feb. 18, 2026); *Quintero-Villanueva v. Bondi*, 1:26-cv-32, Dkt. 9 (E.D. Va. Feb. 25, 2026).

*Third*, Respondents' interest in detaining Petitioner in contravention of DHS regulations is "nonexistent." *Pineda-Berrios*, 2026 WL 384159, at *7. Parole is premised on a determination that Petitioner did not pose a safety or flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). The record reflects no determination that any facts had changed or that there was any other change in circumstances.

*Finally*, although Respondents have a "weighty" "interest in efficient administration of the immigration laws," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), they "remain subject to an obligation to 'effectuate [Petitioner's] detention in a manner that comports with due process," *Abadin v. Noem*, 2026 WL 217148, at *4 (W.D. Wash. Jan. 28, 2026).

In sum, although Respondents have discretion to release a noncitizen on parole, that does not mean such parole can be revoked in violation of statutes, regulations, and Due Process. Accordingly, Petitioner's continued detention violates the Due Process Clause, and he must be released from custody immediately.

## IV. CONCLUSION

Accordingly, for all of the reasons above, it is hereby ORDERED that the Petition (Dkt. 1) is GRANTED; and it is

FURTHER ORDERED that Respondents are DIRECTED to RELEASE Petitioner on or before 5:00 p.m. on April 10, 2026, with all of his belongings, subject to the conditions of his preexisting parole, except for the expiration date; and it is

FURTHER ORDERED that Respondents are ENJOINED from rearresting Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the expiration date; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e) and the Due Process Clause.

The Clerk is directed to enter judgment in Petitioner Mohammad Shah Khan Ajabzol's favor pursuant to Federal Rule of Civil Procedure 58, to send copies of this Order to all counsel of record, and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
April ___8__, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

9